UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
JEAN PINERO,                            )
                                        )
        Petitioner,                     )
                                        )
            v.                          )   Case No. 3:16-cv-30032-TSH
                                        )
SEAN MEDEIROS,                          )
                                        )
        Respondent.                     )
_____)


REPORT AND RECOMMENDATION ON
PETITION FOR WRIT OF HABEAS CORPUS

On February 17, 2016, Jean Pinero ("Petitioner"), who is currently serving a sentence in a

Massachusetts correctional facility, petitioned this court for a writ of habeas corpus pursuant to

28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996

(AEDPA) ("the Petition") (Dkt. No. 1).  Sean Medeiros ("Respondent") opposes the Petition

(Dkt. No. 22).

Petitioner was convicted of three counts of home invasion; one count of breaking and

entering in the nighttime; one count of assault and battery by means of a dangerous weapon, that

being a firearm; one count of unlawful possession of firearm; one count of unlawful possession

of ammunition without an FID card; and one count of possession of a firearm during the

commission of a felony (SA IV at 1826-28).[1]  In the Petition, Petitioner argues that he was

deprived of his rights as guaranteed by the Sixth and Fourteenth Amendments to the United

---

[1] Respondent has submitted as his Supplemental Answer four volumes of proceedings in the state court system which are referenced herein as SA I at __; SA II at __; SA III at __; and SA IV at __.

States Constitution by: <u>Ground One</u> – the Commonwealth's failure to present sufficient evidence to warrant his convictions; <u>Ground Two</u> – improprieties in the prosecutor's closing argument, including vouching for the credibility of witnesses and arguing facts not in evidence; and <u>Ground Three</u> – trial counsel's ineffectiveness in failing to object to hearsay evidence admitted in violation of the Confrontation Clause (Dkt. No 1).  For the reasons set forth below, I recommend that the Petition be DENIED.

      I.     <span style="font-variant: small-caps;">Background</span>

       A.  <u>Facts</u>

The facts as found by the Massachusetts Appeals Court (MAC), which have not been rebutted by clear and convincing evidence, *see, e.g., Leng v. Gelb*, Civil Action No. 14-cv-10462-ADB, 2016 WL 7428221, at *1 (D. Mass. Dec. 22, 2016), are set forth below. Supplemental facts consistent with the MAC's findings are referenced herein in connection with the discussion of Petitioner's grounds for relief.  *See Winfield v. O'Brien*, 775 F.3d 1, 3 (1st Cir. 2014) (supplementing the MAC's description of the facts with other record facts consistent with the MAC's findings).

> Madeline, Jaritza, and Audeliz Nieves are siblings.  All of them share a second-floor apartment in a three-story apartment building located at 312 Liberty Street in Springfield.
>
> A sizeable party was held there on the night of April 9, 2011.  The defendants [including Petitioner] were in attendance.  Madeline and one of her brothers tried to disperse guests who had loitered on the grounds after the party.  A fight ensued, erupting into a melee.
>
> After the melee, [Petitioner] verbally threatened the Nieves family.  The Nieves family retreated back into the apartment building.  The defendants forced their way through the rear exterior door and pursued them.  Madeline saw the defendants climbing the stairs just before she and her family made it to their second-floor apartment.  She closed and locked the apartment door.  Less than thirty seconds after the downstairs break-in, multiple gunshots were fired through the door to the Nieves's apartment.  One shot hit Madeline.  She could not see who fired the shots.

Two guests telephoned 911.  Police officers arrived within minutes.  A group outside the building warned police that another group nearby had a gun.  That other group included the defendants.

As the officers approached him, Morales fled and then resisted arrest, but was subdued by the police.  He was driven to a site for a showup.  He stood at least thirty feet away from witnesses and yelled, "Any of you niggas identify me, I will be back to kill you."  Jaritza sat in a police cruiser during the showup and did not hear the threat; she identified the defendants as the ones who broke into the building.

The police found no weapons on the defendants.  The gun that shot Madeline never was recovered.  Gunshot residue (GSR) tests on the defendants and on samples of their clothing were negative.  Nevertheless, the defendants were convicted of the aforementioned charges.

*Commonwealth v. Morales*, No. 12-P-1468, at *1-2, 2014 Mass. App. Unpub. LEXIS 961 (Mass. App. Ct. Sept. 4, 2014) (footnote omitted).[2]

    B. Procedural History

On May 12, 2011, the Grand Jury for Hampden County indicted Petitioner on six counts of home invasion; one count of breaking and entering into a building in the nighttime to commit a felony; four counts of assault and battery with a dangerous weapon; one count of carrying a firearm without a license; one count of possessing ammunition without an FID card; and one count of committing a felony while in possession of a firearm (SA I at 1-5).  Plaintiff pled not guilty to all charges (SA I at 5).  On Petitioner's motion, three counts of home invasion were dismissed (SA I at 6).  Petitioner went to trial on the remaining counts, with trial commencing on February 8 and concluding on February 17, 2012 (SA I at 6-7).  The jury acquitted Petitioner of

_____

[2]  For purposes of reciting the facts, the court has relied on the LEXIS version of the Massachusetts Appeals Court's unpublished opinion (Tr. I at 317-320) because it appears that the initial sentence of the fact section is omitted in the opinion appearing as *Commonwealth v. Morales*, No. 12-P-2014, WL 4355625 *1 (Mass. App. Ct. Sept. 4, 2014) (unpublished) (SA I at 321-24).

three of the four counts of assault and battery with a dangerous weapon and, as is set forth above, convicted him on the remaining charges (SA I at 7). The presiding judge sentenced Petitioner to not more than twenty-five and not less than twenty years in state prison on each of counts three, four, and five (the home invasion charges), those sentences to run concurrently, and to shorter concurrent sentences on the remaining charges (SA I at 7). Petitioner timely filed a notice of appeal (SA I at 7). The MAC heard argument in the case on April 3, 2014 (SA I at 12). On September 4, 2014, Petitioner's convictions were affirmed in an unpublished opinion. *See Morales*, 2014 WL 4355625, at *4.

In Petitioner's direct appeal to the MAC, he argued that: (1) the trial court erred in denying his motion for a required finding of not guilty on the charges of carrying a firearm without a license and possession of a firearm during the commission of a felony because (a) the Commonwealth offered no evidence that anyone had seen Petitioner or either of his co-defendants with a firearm and there was, therefore, no evidence that Petitioner saw a gun or knew of its presence, and (b) with no one having seen the gun that was fired at Madeline's door,[3] the Commonwealth had not proved that the gun satisfied the statutory definition of a firearm; (2) the trial court erred in denying Petitioner's motion for a required finding of not guilty on the home invasion charges because there was no evidence at trial that Petitioner or one of his co-defendants was armed with a dangerous weapon at the time of entry into the multifamily structure in which the Nieves family lived and no evidence that Petitioner knew that any coventurer was armed with a dangerous weapon; (3) the trial court erred in denying his motion for a directed verdict on the charge of assault and battery by means of a dangerous weapon because the Commonwealth's evidence did not sufficiently exclude the possibility that an

---

[3] For ease of reference, members of the Nieves family are referred to by their first names.

individual unrelated to Petitioner and the co-defendants committed the shooting; (4) for the

foregoing reasons, there was also insufficient evidence to support Petitioner's conviction for

breaking and entering with intent to commit a felony, commission of a felony with a firearm, and

possession of ammunition; and (5) improprieties in the prosecutor's closing argument were

highly prejudicial and warranted a new trial (SA I at 18, 52-67).

Addressing the appeals of Petitioner and co-defendant Ronney Martinez (Martinez) in

tandem, the MAC made short work of Petitioner's sufficiency of the evidence arguments.[4]

Observing that Petitioner and Martinez were prosecuted as joint venturers, the court stated that,

under Massachusetts law, the Commonwealth could rely on circumstantial evidence to convict

multiple defendants in a joint venture involving a firearm even if the police did not find a gun, no

one particular defendant was conclusively proved to have possessed a gun, and the

Commonwealth did not show which defendant committed the attack.  The court found that the

circumstantial evidence supporting Petitioner's convictions was substantial.  Madeline's

testimony that she saw the defendants following her up the stairs coupled with the contents of a

recording of a 911 telephone call made by individuals in the apartment were sufficient for a

reasonable finder of fact to conclude that there was no time for anyone other than Petitioner and

Martinez to have entered the stairwell and fired a gun through the apartment door.  The MAC

also ruled that there was sufficient evidence from which the jury could have found that Madeline

was shot with a gun that met the statutory definition of a firearm.  "Because she could not see a

---

[4] The jury acquitted co-defendant Jonathan Morales (Morales) on three counts of home invasion, one count of assault and battery by means of a firearm, three counts of assault and battery by means of a knife, one count of unlawful possession of a firearm, one count of unlawful possession of ammunition, and one count of possession of a firearm during the commission of a felony.  Morales was convicted on two counts of assault and battery on a police officer, one count of resisting arrest, and one count of intimidation of a witness (SA IV at 1823-26).

gun in the possession of the defendants despite having seen them in the stairwell, and because the evidence otherwise prove[d] that one of the defendants fired a gun, the jury reasonably could have inferred from the evidence that the gun used by the defendants" had a barrel length of less than sixteen inches and therefore qualified as a firearm. *Morales*, 2014 WL 4355625, at *2 (citing *Commonwealth v. Naylor*, 899 N.E.2d 862, 868 (Mass. App. Ct. 2009); *Commonwealth v. Evans*, 786 N.E.2d 375, 388 (Mass.) (the grand jury could infer a barrel length of less than sixteen inches from testimony that a gun was carried in a defendant's pocket), *cert. denied*, 540 U.S. 923 & 540 U.S. 973 (2003)).

The MAC also rejected Petitioner's claim that he was unfairly prejudiced by improprieties in the prosecutor's closing argument.  Because Petitioner did not object at trial to the statements of which he complained on appeal and did not make a general objection to the prosecutor's closing argument at its conclusion, the MAC considered this argument under a substantial risk of a miscarriage of justice standard of review.  The MAC rejected the contention that the prosecutor misstated the expert evidence about the results of GSR tests on Petitioner's hands and clothing, noting that the prosecutor's argument was consistent with the expert's testimony about the conclusions that reasonably could be drawn from the negative results of the GSR test.  *Id.* at *3 (citing *Commonwealth v. Kozec*, 505 N.E.2d 519, 520 (Mass. 1987) (citing *Commonwealth v. Earltop*, 361 N.E.2d 220, 223 (Mass. 1977) (Hennessey, C.J, concurring)).  Similarly, the MAC ruled that the prosecutor's statements about the defendants' claims that they acted in self-defense or defense of another was a fair comment on the evidence rather than prosecutorial error.  *Id.* (quoting *Commonwealth v. Feroli*, 553 N.E.2d 934, 936-37 (Mass. 1990); *Commonwealth v. Ayoub*, 933 N.E.2d 133, 138 (Mass. App. Ct. 2010)).

The Commonwealth conceded that the prosecutor had improperly vouched for the government's witnesses, suggesting that they deserved to be believed merely because they had testified and subjected themselves to cross-examination.  Although no defendant objected to this aspect of the prosecutor's argument, the trial judge identified the issue and gave a timely curative instruction to the jury (SA IV at 1721, 1730).  The MAC held that the trial judge *sua sponte* cured this prosecutorial error.  *Morales*, 2014 WL 4355625, at *3 (citing *Commonwealth v. Hrabak*, 801 N.E.2d 239, 244 (Mass. 2004) (citing *Kozec*, 505 N.E.2d at 522)).  The Commonwealth also conceded that the prosecutor misstated the evidence when she argued that Madeline saw the Petitioner and the co-defendants shoot her.  Madeline was unequivocal in testifying that she was shot through the door to her apartment and could not see who shot her (SA III at 1357-58, 1376, 1391).  Because a principle defense at trial, presented primarily through various witnesses called by the defendants, was that someone other than the defendants entered the back stairs of the apartment with a gun (SA IV at 1501-02, 1517-18, 1529-1530, 1543-44, 1563-64), the MAC ruled that the prosecutor's misstatement went to the heart of the case, as it contradicted the defense that someone other than the defendants could have run up the stairs and fired the shot through the door.  The MAC further ruled that the trial judge's standard instruction that closing arguments were not evidence was insufficient to neutralize the error. *Morales*, 2014 WL 4355625, at *4.  Nonetheless, the MAC held that "it would not 'be reasonable to conclude that the error materially influenced the verdict' in this case" *id.* (quoting *Commonwealth v. Randolph*, 780 N.E.2d 58, 67 (Mass. 2002)), because "there was abundant evidence, absent the prosecutor's misstatement, for the jury to find that [Petitioner] and Martinez shot Madeline."  *Id.*  Finally, assuming for the sake of argument that the prosecutor also misstated the evidence when she argued that the defendants had an unspoken plan to work

together in the commission of the charged offenses, any such error did not go to the heart of the case and it was, in any event, cured by the judge's instruction that proof of a joint venture did not require proof of an advance plan. *Id.* (citing *Commonwealth v. Zanetti*, 910 N.E.2d 869, 885 (Mass. 2009); *Commonwealth v. Daughtry*, 627 N.E.2d 928, 932 n.2 (Mass. 1994)).

Finally, the MAC rejected the contention, advanced by Martinez and adopted by Petitioner, that their trial attorneys were ineffective for failing to object on hearsay grounds to a statement by police officer Darren Fitzpatrick that, when he and his partner arrived in the vicinity of 312 Liberty Street, people on the porch yelled "Grab him, they have a gun" (SA III at 928).[5] The police officer volunteered information about the statement in response to a question from the prosecutor about what he and his partner did when, immediately after arriving at the scene, he saw people on the porch motioning and pointing to a crowd that was walking away (SA III at 928). Citing *Commonwealth v. Beatrice*, 951 N.E.2d 26, 31-33 (Mass. 2011), the MAC held that this statement was admissible as a nontestimonial excited utterance because it was made to enable police assistance to meet an ongoing emergency. Counsel, the MAC concluded, were not ineffective for failing to object to admissible testimony. *Morales*, 2014 WL 4355625, at *2.

The MAC affirmed Petitioner's convictions. *Id.*, at *4.

Petitioner applied for further appellate review by the Massachusetts Supreme Judicial Court (SA I at 12-13), which application was denied on November 26, 2014 (SA I at 13).

II.    DISCUSSION

A.    Standard of Review

---

[5] The MAC's opinion addresses this claim as though Martinez was the only defendant who raised it on direct appeal. The docket, however, shows that Petitioner filed a motion for leave to adopt the arguments in Martinez's replacement brief, including the ineffective assistance claim, which motion was granted by the MAC on September 4, 2014, the date on which the MAC issued its decision in the case (SA I at 12).

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the . . . AEDPA." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). "A habeas petitioner must meet certain preliminary criteria before [a court] can reach the merits of his claim." *McCambridge v. Hall*, 303 F.3d 24, 34 (1st Cir. 2002). "He must have fairly presented his claims to the state courts and must have exhausted his state court remedies." *Id*. (citing 28 U.S.C. § 2254(b)(1)(A)). "Further, if the state decision rests on the adequate and independent state law ground of procedural default, then federal habeas review is unavailable absent a showing of cause and prejudice, or a showing that a miscarriage of justice will otherwise result." *Id*. (citing *Strickler v. Greene*, 527 U.S. 263, 282 (1999); *Gunter v. Maloney*, 291 F.3d 74, 78 (1st Cir. 2002); *Burks v. Dubois*, 55 F.3d 712, 716 (1st Cir. 1995)).

If these threshold criteria are met, the level of review to which a petitioner is entitled depends on whether or not his claims were "adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). "A matter is 'adjudicated on the merits' if there is a 'decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'" *Junta v. Thompson*, 615 F.3d 67, 72 (1st Cir. 2010) (quoting *Teti v. Bender*, 507 F.3d 50, 56 (1st Cir. 2007)). "'[A] state court decision that does not address the federal claim on the merits falls beyond the ambit of the AEDPA,' *Clements v. Clarke*, 592 F.3d 45, 52 (1st Cir. 2010), and the habeas court reviews such a claim *de novo*." *Junta*, 615 F.3d at 71 (citing *Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir. 2001)). In contrast, if the state court has "adjudicated [the claim] on the merits," a federal habeas court may not grant relief unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See also Junta*, 615 F.3d at 71. A legal principle is "clearly established" within the meaning of subparagraph (d)(1) "only when it is embodied in a holding of th[e] [Supreme] Court." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (citing *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)). Authority to issue the writ is limited to "cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e] [Supreme] Court's precedents." *Id*. at 102. Further, in conducting its review, the federal habeas court must presume correct the factual determinations made by state courts, unless the habeas petitioner can meet "the burden of rebutting the presumption of correctness by clear and convincing evidence." *See* 28 U.S.C. § 2254(e)(1); *see also Clements*, 592 F.3d at 47. Section 2254(e)(1)'s "'presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact.'" *Teti*, 507 F.3d at 58 (quoting *Norton v. Spencer*, 351 F.3d 1, 6 (1st Cir. 2003)). With these general principles in mind, the court turns to Petitioner's claims.

     B.  <u>Petitioner's Claims</u>

        1.  <u>Ground One – Sufficiency of the Evidence</u>

Petitioner presented his insufficiency of the evidence contention and exhausted his state court remedies as required by 28 U.S.C. § 2254(b)(1)(A).  The MAC addressed Petitioner's sufficiency of the evidence claim on the merits.  The MAC's decision is entitled to AEDPA deference because the MAC evaluated Petitioner's challenge to the sufficiency of the evidence using a standard derived from *Jackson v. Virginia.*  The MAC began its analysis by addressing the claim of co-defendant Morales that there was insufficient evidence to convict him of witness intimidation.  *Morales*, 14 N.E.3d 969, at *1.  The MAC announced that the standard of review for this claim was "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Id.* (quoting *Commonwealth v. Latimore*, 393 N.E.2d 370, 374 (Mass. 1979) (quoting *Jackson*, 443 U.S. at 318-19)).  Although the MAC did not repeat the standard of review when it then turned its attention to Petitioner's sufficiency of the evidence claims, it is wholly reasonable to infer that the court applied the same standard of review to Petitioner's sufficiency contentions that it applied to Morales's sufficiency contentions.  And, because in *Latimore* the Massachusetts Supreme Judicial Court "expressly adopted the federal constitutional standard for sufficiency of the evidence challenges as set out in *Jackson*[,] . . . the [MAC's] decision on [Petitioner's] sufficiency of the evidence claim is entitled to deference under 28 U.S.C. § 2254(d)(1)."  *Akara v. Ryan*, 270 F. Supp. 3d 423, 432 (D. Mass. 2017).

The standard for evaluating this claim is well-established.  "In seeking to set aside a verdict under the federal Constitution for lack of sufficient proof, [Petitioner] needed to convince the Massachusetts courts that 'after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt.'"  *Winfield*, 775 F.3d at 7 (first alteration in original) (quoting

*Jackson*, 443 U.S. at 319).  This standard calls for respect for the jury's verdict but does not insulate a verdict that is based on interpretations of the evidence that are "'unreasonable, insupportable, or overly speculative.'"  *Id.* (quoting *United States v. Spinney*, 65 F.3d 231, 234 (1st Cir. 1995)).  Having failed to convince the Massachusetts courts that his convictions were not supported by sufficient evidence, this habeas petition provides Petitioner with a second, more limited opportunity to persuade this court to set aside the jury's verdict.  As the First Circuit explained in *Winfield*, constrained by AEDPA,

> collateral federal review is limited to determining whether the state courts'
> decision finding the evidence constitutionally sufficient "was contrary to, or
> involved an unreasonable application of clearly established federal law, as
> determined by the Supreme Court of the United States [.]"  28 U.S.C.
> §2254(d)(1).  In other words, [this court] do[es] not ask . . . whether the evidence
> was constitutionally sufficient.  [The court] ask[s], instead, whether the state
> courts' ruling that the evidence is constitutionally sufficient was itself
> "unreasonable."  *Id.*  "Unreasonable" in this context means that the decision
> "evinces some increment of incorrectness beyond mere error."  *Leftwich v.
> Maloney*, 532 F.3d 20, 23 (1st Cir. 2008); *see generally Hurtado v. Tucker*, 245
> F.3d 7, 16 (1st Cir. 2001) ("Habeas review involves the layering of two standards.
> The habeas question of whether the state court decision is objectively
> unreasonable is layered on top of the underlying standard governing the
> constitutional right asserted.").  The resulting test raises a high bar, but it is
> nevertheless a bar that can be met.  *See O'Laughlin v. O'Brien*, 568 F.3d 287, 304
> (1st Cir. 2009) (acknowledging the "extremely high bar that must be overcome on
> habeas review to overturn a state court decision," but finding the bar met).

*Winfield*, 775 F.3d at 8 (first alteration in original; footnote omitted).

*Jackson* requires this court to assess the evidence with reference to the elements of the challenged offenses as defined by state law.  *See Jackson*, 443 U.S. at 324 (finding that a rational trier of fact could have found the petitioner guilty of first-degree murder beyond a reasonable doubt under Virginia law).  Before this court, Petitioner challenges the convictions that required as an element the possession of a firearm (Dkt. No. 25 at 5).  He was tried on the theory that he participated in the charged offenses as a joint venturer or aided and abetted in their commission.

*See Zanetti*, 910 N.E.2d at 884 (discussing the evolution of Massachusetts law and concluding that, after issuance of the rescript in *Zanetti*, trial judges should charge juries using the language of aiding and abetting rather than joint venture; also ruling that jurors should not be required to decide whether a defendant functioned as a principal or an aider and abettor).  To meet its burden of proof with respect to the offenses involving use or possession of a firearm, the Commonwealth was required to prove beyond a reasonable doubt that Petitioner knowingly participated in the charged offenses, alone or with others, with the intent required for the charged offenses, and that he possessed a firearm or knew that another participant in the charged offenses possessed a firearm.  *See, e.g., Commonwealth v. Gorman*, 998 N.E.2d 344, 349 (Mass. App. Ct. 2013) (citing *Commonwealth v. Lee*, 948 N.E.2d 1223, 1226 (Mass. 2011); *Commonwealth v. Phillips*, 897 N.E.2d 31, 44 (Mass. 2008)).  "The jury may infer the defendant's mental state from the circumstances of the crime and his knowledge of them."  *Id.* (citing *Commonwealth v. Soares*, 387 N.E.2d 499, 507-08, *cert. denied*, 444 U.S. 881 (1979)).  Under well-established Massachusetts law, the requisite element of possession of a firearm or knowledge of another's possession of a firearm may be proved by circumstantial evidence.  *Lee*, 948 N.E.2d at 1227.

Here, the MAC reasonably ruled that the circumstantial evidence against the Petitioner was constitutionally sufficient.  A number of witnesses testified that Petitioner was involved with others in assaulting members of the Nieves family outside of their home (e.g., SA III at 858-860, 969-971, 1296-97).  The assault on Waldemar kicked off a melee in the Nieves's back yard.  Waldemar identified Petitioner, Martinez, and Morales as his "main" assailants (SA II 752).  Jaritza, Audeliz, and Madeline testified that later, after members of the Nieves family and their friends managed to extricate themselves from the melee and re-enter the house, Petitioner was prominently involved in, first, seeking to prevent Madeline from shutting the first-floor door (SA

III at 981-82, 1304), and, second, breaking open the first-floor door that provided access to the stairwell and to the Nieves family's second-floor apartment (SA III at 982, 1126-28, 1305-06). Jaritza told Martinez to please stop because he had hurt her brother.  In response, Martinez told Jaritza that he was "coming after y'all."  Madeline heard Martinez say he was going to "finish" Waldemar (SA III at 981-84, 1306-08).  As Madeline made it into her second-floor apartment, she saw Petitioner and Martinez coming up the stairs to the second-floor apartment.  As she held the door closed, those outside the door kicked and banged on it, trying to get it open.  Then she heard gunshots and was shot in the arm (SA III at 1309-1310).  Audeliz saw Petitioner running up the stairs behind him (SA III at 1129).  The prosecution played a recording of a 911 call for the jury made by two men in the Nieves apartment who told the police that someone was breaking down the door.  Gunshots could be heard on the 911 audiotape (SA IV at 1438-1440).

The jury was not required to credit the testimony of the defendants' witnesses.  The record supports as reasonable and fully consistent with the *Jackson* requirements the MAC's conclusion that, based on the timing of events, Madeline's testimony "taken together with the information from the 911 recording," established beyond a reasonable doubt that Petitioner and Martinez entered the stairwell, ran up the stairs, and fired the gun through the door into the apartment.  *Morales*, 2014 WL 4355625, at \*2.  *See Cooley v. Gaffney*, Civil No. 18-10258-LTS, 2018 WL 3999603, at \*6 (D. Mass. Aug. 21, 2018) (the state court reasonably concluded that circumstantial evidence was sufficient to support the petitioner's convictions on an aiding and abetting theory), *appeal docketed*, No. 18-1835 (1st Cir. Aug. 31, 2018).

The MAC's conclusion that circumstantial evidence was sufficient to establish that the gun the Petitioner and Martinez used to shoot through the apartment door was a firearm was also reasonable on this record.  There was testimony that a shell casing recovered by the police was

14

ejected either from a handgun or a rifle (SA III at 1084).  Neither Madeline nor any other witness

who saw Petitioner or Martinez breaking down the first-floor door and running up the stairs

testified that they saw either individual with a gun.  A firearm was defined as a "pistol, revolver

or other weapon of any description … from which a shot or a bullet can be discharged and of

which the length of the barrel or barrels is less than 16 inches or 18 inches in the case of a

shotgun as originally manufactured[.]"  Mass. Gen. Laws ch. 140, § 121.  In the absence of "any

statement by [the] victim[s] of having seen a barrel, the jury could reasonably infer that the

shooter fired a handgun rather than a shotgun or a rifle."  *Naylor*, 899 N.E.2d at 868; *cf.*

*Commonwealth v. Manning*, 693 N.E.2d 704, 713 (Mass. App. Ct. 1998) (the evidence was

sufficient that the gun fired by the defendant had a barrel length of 16 inches or less where the

defendant kept the gun in his pocket).  Because the witnesses in the instant case did not see a

gun, the MAC reasonably found that the jurors could infer that the gun fired through the

apartment door was small enough to be concealed and must have had a barrel less than 16 inches

long.

The Commonwealth was not required to prove who among the coventurers possessed the

firearm or who fired the shots.  *See Zanetti*, 910 N.E.2d at 882-83.  The record contains evidence

showing that Petitioner was one of the Nieves family's main assailants from the outset.  He then

pursued the wounded Nieves family members to their house.  He helped break down the first-

floor door that led to the stairwell and pursued some five to six people up the stairs.  He was

actively engaged in these activities alongside Martinez when Martinez announced to Jaritza that

he was "coming after y'all."  Petitioner was still with Martinez when they were arrested by

police officers who arrived shortly thereafter (SA III at 994-95).  There was ample evidence from

which the jury reasonably could infer that Petitioner and Martinez were both present when the

shots were fired.  One of those shots was fired through the door and hit Madeline.  Another was fired directly into the lock of the second-floor door Petitioner and Martinez were trying to break down (SA III at 1194-95).

*Lee*, 948 N.E.2d at 1227, is instructive on the applicable principles of state law.  The *Lee* court described the circumstances in which a jury could infer a coventurer's knowledge of a weapon based on circumstantial evidence.  Such evidence, the court stated, could include proof of a defendant's actions, statements, relationship with a coventurer, or shared motive.  *Id*.  Here, there was evidence that Petitioner intended to enter the Nieves home to cause harm to one or more occupants because he broke down the first-floor door with Martinez, who told Jaritza that he was going to "get" her brother.  From their actions, it can be inferred that he shared the motive of injuring the Nieves family with Martinez, who voiced several threats, and that both acted on that motive.  Petitioner had reason to know there were five or more people in the Nieves apartment because he helped chase those people back to the house and up the stairs.  It was fair to infer in the circumstances, which included a relatively large group of people in the apartment, that Petitioner and Martinez needed to be armed and knew they needed to be armed to follow through on Martinez's threats.  In *Lee*, the Court reversed the defendant's conviction of breaking and entering in the nighttime with intent to commit a felony because "[m]issing from the . . . case [was] any evidence that, at the time of [the coventurers'] entry into the apartment, any crime necessitating the use of a dangerous weapon was threatened, anticipated, or planned by the coventurers."  *Id*.  The same was not true as to Petitioner and Martinez:  there were threats to injure one of the many individuals they helped chase back into the apartment and they took immediate steps to follow through on those threats.  In these circumstances, the jury could reasonably infer Petitioner's knowledge of a firearm.  *See id*.  The *Zanetti* case, on which

16

Petitioner relies, is distinguishable.  In *Zanetti*, there was no evidence "about what the occupants of the [the car in which the defendant was riding], and the victim [,the driver in the car alongside the defendant's car], were actually doing and saying before the defendant screamed that the victim had a gun."  *Zanetti*, 910 N.E.2d at 876.  Missing in *Zanetti*, in contrast to the instant case, was any evidence of prior concerted action directed at the victim coupled with threats of violence by two individuals against a larger group.

In sum, "there was sufficient evidence in the record from which a jury could find [Petitioner] guilty of [the home invasion and firearms charges] under the joint venture theory. The conviction[s are] therefore valid under the standards set by *Jackson* and *Latimore*."  *Akara*, 270 F. Supp. 3d at 433; *see also Cooley*, 2018 WL 3999603, at *6.

### 2. Second Ground – The Prosecutor's Closing Argument

#### a. Petitioner's Contention that the Prosecutor's Closing Argument Violated his Due Process Rights was Procedurally Defaulted.

Petitioner argues that the MAC's decision that errors in the prosecutor's closing argument did not violate his due process rights was an unreasonable determination and that he exhausted this claim in the state courts (Dkt. No. 25 at 10-12).  The Respondent contends that the court should not reach this issue because the state court rejected it on independent and adequate state grounds, resulting in procedural default (Dkt. No. 22 at 21-23).  I agree with Respondent and recommend that the court find that it is foreclosed from considering this claim based on Petitioner's procedural default.

As the MAC noted, Petitioner did not object to the prosecutor's closing argument at trial (SA IV at 1718-1721).  *See Morales*, 2014 WL 4355625, at *3.

> The Supreme Court has applied the independent and adequate state ground doctrine "in deciding whether federal district courts should address the claims of state prisoners in habeas corpus actions."  *Coleman v. Thompson*, 501 U.S. 722,

729 … (1991).  "The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* at 729-730. … Such judgments "rest[] on independent and adequate state procedural grounds." *Id.* at 730. …  To overcome the bar to federal review in such cases, a petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 750[.]

Here, the [MAC] noted that [Petitioner] did not object to the prosecutor's closing argument, and in accordance with established Massachusetts law, it limited itself to determining whether there was a substantial risk of miscarriage of justice. [*Morales*, 2014 WL 4355625, at *3.].

. . .

Because the [MAC] based its decision on [Petitioner's] failure to object at trial, [Petitioner's] claim is barred unless he can demonstrate cause and actual prejudice, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *See Burks*, 55 F.3d … [at] 716 & n.2 ….

*Faulk v. Medeiros*, 321 F. Supp. 3d 189, 196-97 (D. Mass. 2018); *see also, e.g., Lynch v. Ficco*, 438 F.3d 35, 44-45 (1st Cir. 2006).

Faced with state court convictions that are affirmed based on an adequate and independent state procedural ground, Petitioner "has the burden of proving both cause and prejudice." *Burks*, 55 F.3d at 716.  "Cause" in this context "must relate to an objective factor, external to the defense, that thwarted (or at least substantially obstructed) the efforts of the defendant or his counsel to obey the state's procedural rule." *Id.* at 717.  "In some instances, state defense counsel's ineffectiveness at trial in failing to preserve a claim will suffice to establish such cause." *Lynch*, 438 F.3d at 46.  However, "a federal habeas petitioner trying to excuse his procedural default by showing ineffective assistance of counsel as cause must first have presented the ineffective assistance claim to the state court." *Id.* (citing *Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000); *Gunter v. Maloney*, 291 F.3d 74, 81 (1st Cir. 2002)). This is so because the evaluation of an ineffective assistance of counsel claim requires a

substantial factual record.  "[W]ithout exhaustion requirements for ineffective assistance claims, '[i]n order to determine whether there was cause for a procedural default, federal habeas courts would routinely be required to hold evidentiary hearings to determine what prompted counsel's failure to raise the claim in question.'"  *Gunter*, 291 F.3d at 81 (second alteration in original) (quoting *Murray v. Carrier*, 477 U.S. 478, 487 (1986)).  Petitioner did not raise the ineffective assistance of counsel claim before the MAC (SA I at 15-70).  There is no mention of ineffective assistance of counsel in the list of issues identified in Petitioner's brief filed with the MAC or in the argument section of his opening brief, or in his reply brief (SA I at 277-295), nor is there any reference to an ineffective assistance claim in the portion of the MAC's opinion addressing alleged errors in the prosecutor's closing argument.  *Morales*, 2014 WL 4355625, at *3-4.

The First Circuit observed in *Lynch* that a Petitioner "can try to show cause and prejudice to excuse the default of the ineffective assistance claim in order to show cause and prejudice to excuse his procedural default of the different constitutional claim he wants to present."  *Lynch*, 438 F.3d at 46 (citing *Carpenter*, 529 U.S. at 453).  Here, as in *Lynch*, Petitioner does not present such an argument.  Instead, he appears to contend that he exhausted his ineffective assistance claim by including references to the claim in his application for further appellate review (Dkt. No. 25 at 10-11).  This contention fails as a matter of settled law in this circuit.  Even assuming that Petitioner raised the argument in state court by his brief references to ineffective assistance in his application for further appellate review (SA I at 305, 314-15), he did so "for the first time to the state's highest court on discretionary review."  *Gunter*, 291 F.3d at 82.  *See* Mass. R. App. P. 27.1(e) (2018) (with certain statutory exceptions not applicable here, the decision on whether to grant further appellate review is discretionary with the justices of the Massachusetts Supreme Judicial Court).  As a matter of law, a reference to Petitioner's trial counsel's allegedly

ineffective assistance in a petition for discretionary further appellate review did not fairly present his ineffective claim "to the state court, giving it a full opportunity to deal with the claimed constitutional violation and develop the facts surrounding this claim." *Gunter*, 291 F.3d at 82. Moreover, because Petitioner did not raise his ineffective claim in his brief to the MAC and the MAC did not *sua sponte* address such a claim, Petitioner could not raise the issue as of right in his application for further appellate review. *See Commonwealth v. Sepheus,* 9 N.E.3d 800, 810 (Mass. 2014) (noting defendant's failure to raise his ineffective assistance of counsel claim before the MAC, but nonetheless considering the claim *because the MAC had chosen to do so*); *Commonwealth v. Lombard*, 646 N.E.2d 400, 406 (Mass. 1995) (when an application for further appellate review is allowed, only those issues presented to the MAC and adequately briefed before the Massachusetts Supreme Judicial Court are before the Supreme Judicial Court). Because "[r]aising a claim for the first time to the state's highest court on discretionary review is not fair presentation for purposes of exhaustion," *Gunter*, 291 F.3d at 81 (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)), the contents of the application for further appellate review cannot assist the Petitioner in avoiding procedural default as to his contentions about the prosecutor's missteps in closing argument.[6]

Petitioner "makes no attempt to demonstrate that default would result in a miscarriage of justice, a 'narrow exception to the cause and prejudice imperative seldom to be used, and explicitly tied to a showing of actual innocence.'" *Glacken v. Dickhaut*, 585 F.3d 547, 551 (1st Cir. 2009) (quoting *Burks*, 55 F.3d at 717). Petitioner does not claim actual innocence and, for

---

[6] There was a readily available alternative for Petitioner to exhaust the ineffective assistance claim. He had the absolute right to file a motion for a new trial under Massachusetts Rule of Criminal Procedure 30(a) raising this claim. *See Gunter*, 291 F.3d at 82.

reasons set forth below, the record here does not persuade that the jury would not have convicted him but for errors in the prosecutor's closing argument.  *See Faulk*, 321 F. Supp. 3d at 197.

For the foregoing reasons, I recommend that the court find that Petitioner's closing argument claim was procedurally defaulted and cannot be considered on its merits.  *See, e.g., Glacken*, 585 F.3d at 551*; see also Gunter*, 291 F.3d at 82; *Faulk*, 321 F. Supp. 3d at 197.

      b.   The MAC Reasonably Rejected Petitioner's Claim that the Prosecutor's Closing Argument Violated His Due Process Rights

Even if Petitioner's due process claim based on the prosecutor's closing argument was not procedurally defaulted, which it was, the claim would fail on its merits.  "For this kind of due process challenge to succeed, 'it is not enough that prosecutors' remarks were undesirable or even universally condemned.'"  *Olszewski v. Spencer*, 466 F.3d 47, 59 (1st Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted)).  "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  The factors to be considered are whether: (1) the prosecutor's conduct was isolated or deliberate; (2) there was an appropriate curative instruction; and (3) it is likely that any prejudice surviving the judge's instructions could have affected the outcome of the case.  *See Olszewski*, 466 F.3d at 59 (citing and quoting *United States v. Lowe*, 145 F.3d 45, 50 (1st Cir. 1998)).

In Petitioner's habeas petition, he identified what he alleged were four improprieties in the closing argument (Dkt. No. 1 at 7), as follows: (1) vouching for the credibility of the prosecution's witnesses; (2) argument that Petitioner's self-defense contention was an admission of guilt; (3) a statement unsupported by the evidence that Petitioner and the co-defendants had a "plan;" and (4) a misstatement of Madeline's testimony to the effect that Madeline had pointed

to each of the co-defendants and testified that "you shot me" (Dkt. No. 1 at 7).  Petitioner argues that the cumulative impact of these alleged errors denied him due process.

As to the first of the factors set out in *Olszewski*, the record does not show that any errors by the prosecutor were deliberate.  The experienced trial judge who listened to the argument made no such suggestion or finding and there was no objection to the prosecutor's closing from any of the three defense attorneys (SA IV at 1718-1722).  *See United States v. Procopio*, 88 F.3d 21, 31 (1st Cir. 1996) ("The fact that the defense did not object may also suggest that, in the conditions of the courtroom, the passage[s] in question passed by as mere rhetoric.").

Next, this court is directed to consider whether the trial judge addressed the claimed errors by instructions to the jury.  The trial judge issued a strong curative instruction, which the jurors are presumed to have followed, in response to the prosecutor's suggestion that her witnesses should be believed because they showed up and testified (SA IV at 1730).  *See United States v. Rodriguez*, 675 F.3d 48, 63 (1st Cir. 2012); *Olszewski*, 466 F.3d at 59-60.  As the MAC found, whether or not there was evidence of a so-called plan among the co-defendants, the trial judge's instructions on aiding and abetting made that point largely irrelevant.  *See Morales*, 2014 WL 4355625, at *4.  She properly instructed the jurors that an "agreement to help if needed does not need to be made through formal or explicit written or oral agreement or advanced plan.  It's enough consciously to act together before or during the crime with the intent of making that particular crime succeed" (SA IV at 1747).  *See Zanetti*, 910 N.E.2d at 885.  There was ample evidence in testimony from the prosecution's witnesses from which the jury could infer beyond a reasonable doubt that Petitioner and Martinez acted together before and during the crimes to make the particular crimes succeed.

Petitioner (joined by his co-defendants) argued that all he did at 312 Liberty Street was act in defense of Martinez (SA IV at 1679, 1683); the prosecutor responded to the argument. The MAC did not err in concluding that the prosecutor was entitled to do so. *See, e.g., Commonwealth v. Bolling*, 969 N.E.2d 640, 653 (Mass. 2012) (the prosecutor's argument in closing that the defendant had "concocted" a theory of self-defense was a proper comment on the evidence); *Commonwealth v. Williams*, 883 N.E.2d 249, 257 (Mass. 2008) (the prosecutor's comment in closing that the defendant was trying to "hide behind the convenient veil of self-defense" was not improper when the defendant mounted a defense through cross-examination and closing argument that he had acted in self-defense); *cf. United States v. Salley*, 651 F.3d 159, 165 (1st Cir. 2011) (it was proper for the government to comment in closing on the plausibility of the defendant's theory that a gun was planted).  There was no need for a curative instruction in connection with this aspect of the argument.  In any event, to the extent Petitioner contends that this comment shifted a burden of proof to him or called into question his right not to testify, the judge instructed the jury on the burden of proof and the defendant's absolute right not to testify at trial (SA IV 1729, 1740-42).

As to any misstatements of the evidence by the prosecutor, the judge instructed the jurors at the outset of the trial that they were the exclusive judges of the facts (SA II at 701-02).  Before closing arguments, the judge reminded the jury that the lawyers' closing arguments were not evidence and that if the attorneys' statements of the evidence varied from the jurors' recollection of the evidence, it was the jurors' recollection that controlled (SA IV at 1648).  She reiterated these points in her final jury instructions, reminding the jurors in unambiguous terms they were the sole judges of the facts and that what the lawyers said was not evidence (SA IV at 1727-28). The trial judge's instructions in Petitioner's case were clear and to the point.  In *United States v.*

*Ortiz*, 447 F.3d 28, 35-36 (1st Cir. 2006), a case on direct appeal, the First Circuit held that the judge's instructions to the jury that counsels' statements were not evidence and that their own recollection of the facts must control was sufficient to address a prosecutor's misstatement of the evidence that was at least as prejudicial as any erroneous statement made by the prosecutor in this case.  On habeas review, this court should conclude that these instructions were sufficient to address any misstatements of the evidence by the state's attorney.  *See Olszewski*, 466 F.3d at 59-60 ("This court has consistently held that where the prosecutor unintentionally misstates the evidence during closing argument, a jury instruction ordinarily is 'sufficient to cure any potential prejudice …'" (quoting *United States v. Bey*, 188 F.3d 1, 9 (1st Cir. 1999)).

As to the third factor, even if, as the MAC held, the prosecutor's misstatement about Madeline's testimony went to the heart of the defense, there is no likelihood that any prejudice survived the judge's instructions.  The verdicts in Petitioner's case show jurors who were careful in their assessment of the evidence and mindful of their role as the exclusive finders of fact.  Although there was evidence that Petitioner's clothes were bloody and one witness saw him with a knife, the jury acquitted him of the charges of assault and battery with a knife on Waldemar, Audeliz, and Juan Nunez, each of whom was unable to identify his assailant.  While other witnesses saw Martinez and Petitioner chasing them up the stairs to the second-floor apartment, Madeline was the only witness who testified to seeing Morales – as well as Petitioner and Martinez – coming up the stairs.  No one testified to hearing Morales threaten a member of the family.  The jury acquitted Morales of the multiple home invasion and firearms offenses with which he was charged.  Petitioner's contentions about prejudice are premised on a view of the evidence that resolves all conflicts, and draws all possible inferences, in his favor.  That is not the narrow standard of review that applies "on writ of habeas corpus."  *Darden*, 477 U.S. at 181.

24

The MAC reasonably found that "the prosecutor's statements in closing argument, whether considered individually or cumulatively, did not constitute a due process violation." *Olszewski*, 466 F.3d at 62. *See also Ortiz*, 447 F.3d at 35-36.

### 3.  Third Ground – Ineffective Assistance of Counsel

As his third ground for relief, Petitioner argues that he was denied effective assistance of counsel because his attorney failed to object to testimony from a police officer that, when the officer and his partner arrived at 312 Liberty Street, people on the porch yelled "Grab him, they have a gun."  Petitioner did not object to this evidence at trial (SA III at 928).  On appeal, Martinez contended that his trial attorneys' failure to object to this evidence constituted ineffective assistance of counsel and Petitioner was granted leave by the MAC to adopt this contention (SA I at 12, 256).

Ineffective assistance claims are governed by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984).  A petitioner must prove two elements.  First, the petitioner must show that his attorney's performance was deficient in some substantial way that denied him effective representation.  *Logan v. Gelb*, 790 F.3d 65, 71 (1st Cir. 2015) (per curiam).  Second, the petitioner must show that this deficient performance actually prejudiced the defense, meaning that there is a reasonable probability that, but for counsel's errors, the results of the criminal proceeding would have been different.  *Id.*

> "[W]hen a federal court reviews an ineffective assistance of counsel claim under §
> 2254, it must use a doubly deferential standard of review that gives both the state
> court and the defense attorney the benefit of the doubt.  This is an extremely
> difficult standard to meet. …"  *Pena v. Dickhaut*, 736 F.3d 600, 606 (1st Cir.
> 2013) (citations and internal quotation marks omitted).  "[T]he pivotal question in
> a federal collateral attack under *Strickland* is not whether defense counsel's
> performance fell below *Strickland*'s standard, but whether the state court's
> application of the *Strickland* standard was unreasonable, that is, whether
> fairminded jurists would all agree that the decision was unreasonable."  *Jewett v.*

> *Brady*, 634 F.3d 67, 75 (1st Cir. 2011) (citations and internal quotation marks
> omitted).

*Jaynes v. Mitchell*, 824 F.3d 187, 196 (1st Cir. 2016) (alterations in original).

Contrary to Petitioner's contention, Respondent does not argue that Petitioner's ineffective assistance claim is procedurally defaulted (Dkt. No. 25 at 15-16; Dkt. No. 22 at 27-33).  Instead, Respondent argues that Petitioner's ineffective assistance claim fails because the MAC's decision rejecting the hearsay challenge and the resulting ineffectiveness claim was a reasonable application of clearly established federal law.  The Respondent's position is persuasive.

The MAC analyzed the ineffectiveness claim raised by Martinez and Petitioner under the state standard for evaluating such claims established in *Commonwealth v. Saferian*, 315 N.E.2d 878, 883 (Mass. 1974).  Under *Saferian*, the court examines whether there has been serious incompetency that falls measurably below that which might be expected from an ordinary fallible lawyer, and, if so, whether this incompetence deprived the defendant of an otherwise available ground of defense.  *See id.*  "Although the [MAC] did not cite *Strickland* for the ineffective assistance of counsel standard, [the First Circuit has] described the *Saferian* standard as 'functionally identical to the federal standard.'"  *Mello v. DiPaulo*, 295 F.3d 137, 144 (1st Cir. 2002) (quoting *Scarpa v. DuBois*, 38 F.3d 1, 7 n.4 (1st Cir. 1994); citing *Ouber v. Guarino*, 293 F.3d 19, 35 (1st Cir. 2002); *Strickland*, 466 U.S. at 688).  The MAC concluded that Petitioner's ineffectiveness claim failed at *Saferian*'s first step (and, implicitly, *Strickland*'s first step) because the challenged evidence was admissible.  *Morales*, 2014 WL 4355625, at *2.

The MAC's ruling that Petitioner's challenge failed under the first prong of the *Saferian* and *Strickland* standards was a reasonable application of federal law.  *See Jewett*, 634 F.3d at 75.  The MAC held that the statement was admissible under Massachusetts law as an excited

utterance.  Although Petitioner seeks to do so, this aspect of the MAC's ruling cannot be

challenged by means of Petitioner's habeas petition.  *See Kater v. Maloney*, 459 F.3d 56, 61 (1st

Cir. 2006) ("It is a fundamental principle of the law of federal habeas corpus in non-death

penalty cases that no habeas claim is stated as to state court criminal convictions unless the

alleged errors are violations of the Constitution, laws, or treaties of the United States.") (citing

*Estelle v. McGuire*, 502 U.S. 62, 67 (1991); 28 U.S.C. §§ 2241(c)(3), 2254(a)).

The MAC, however, also addressed a question of federal law when it ruled that the

statement was nontestimonial such that its admission did not violate the Sixth Amendment's

Confrontation Clause.  *Morales*, 2014 WL 4355625, at *2 (stating that an excited utterance may

be nontestimonial "''when made to … enable police assistance to meet an ongoing

emergency.'''") (quoting *Beatrice*, 951 N.E.2d at 31 (quoting *Davis v. Washington*, 547 U.S. 813,

822 (2006)).  In *Davis*, the Supreme Court ruled that a statement made to a police officer for the

primary purpose of "enabl[ing] police assistance to meet an ongoing emergency" is not

testimonial because the declarant is not acting as a witness.  Admission of a nontestimonial

statement at trial does not violate a defendant's right to confront the witnesses against him or her.

547 U.S. at 828.  Here, the MAC observed that "police arrived swiftly at the scene of a shooting

and multiple stabbings with the shooter still at large."  *Morales*, 2014 WL 4355625, at *2.  The

MAC concluded that the statement was nontestimonial because, viewed objectively, it consisted

of information yelled from the porch to the officers to assist the police in meeting an ongoing

emergency and ending a threatening situation involving members of the public and a gun.  *See*

*Michigan v. Bryant*, 562 U.S. 344, 361-374 (2011); *Davis*, 547 U.S. at 827-28.  Finding that the

officer's testimony fit into a hearsay exception and was not testimonial for Confrontation Clause

purposes, the MAC rejected the ineffective assistance claim on the unimpeachable ground that

counsel had not committed any error in failing to object to its admission. *See Knight v. Spencer*, 447 F.3d 6, 16 (1st Cir. 2006) (petitioner's counsel did not render ineffective assistance in failing to object to errors that were either nonprejudicial or nonexistent) (citing *Vieux v. Pepe*, 184 F.3d 59, 64 (1st Cir. 1999), *cert. denied*, 528 U.S. 1163 (2000)). For the foregoing reasons, I recommend that the court reject the Petitioner's third ground for habeas relief.

III.   RECOMMENDATION

For the foregoing reasons, I recommend that the Court DENY Jean Pinero's Petition for Writ of Habeas Corpus.[7]

Dated: February 25, 2019                                    /s/ Katherine A. Robertson
                                                            KATHERINE A. ROBERTSON
                                                            United States Magistrate Judge

---

[7] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within fourteen (14) days of service of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.